UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 30 2011 ★
BROOKLYN OFFICE

----------------------------------------------------------------- X
                                                                   :
ALLAN M. TAUB,                                                     :     10-CV-2526 (ARR)
                                                                   :
                          Plaintiff,                               :     NOT FOR ELECTRONIC
                                                                   :     OR PRINT PUBLICATION
            -against-                                              :
                                                                   :     ORDER & OPINION
MICHAEL J. ASTRUE, Commissioner of Social Security,               :
                                                                   :
                          Defendant.                               :
                                                                   :
----------------------------------------------------------------- X

ROSS, United States District Judge:

Plaintiff Allan M. Taub ("plaintiff") seeks judicial review of a decision of the

Commissioner of Social Security that he was not disabled under the Social Security Act ("Act")

for purposes of receiving Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI"). The Commissioner has moved for judgment on the pleadings and plaintiff has

cross-moved. For the reasons explained below, the court denies the Commissioner's motion,

grants plaintiff's motion insofar as it seeks reversal of the Commissioner's decision, and remands

the case for further proceedings.

## BACKGROUND

Born in 1951, plaintiff completed two years of college and has worked as a driver and

television producer. Administrative Record ("AR") 133, 443, 446-47, 458-59. On February 27,

2008, plaintiff filed an application for DIB and SSI alleging that he was unable to work due to

hypertension, back and neck pain, cognitive impairment, and hyperlipidemia. AR 133-36, 154.

At the time of the onset of his alleged disability, plaintiff was working as a taxicab driver, and

many of his alleged impairments stem from an automobile accident he claims to have sustained

1

while working in that capacity.[1]  AR 443-49.  Plaintiff's applications for DIB and SSI were

denied on June 4, 2008.  AR 78-88.  Following this denial, Plaintiff requested a hearing, which

took place before an Administrative Law Judge ("ALJ") on April 22, 2009.  AR 429-92.

At the hearing, plaintiff appeared pro se and testified as to his impairments.  He claimed

that, on March 10, 1993, he suffered a closed-head injury when, during an automobile accident,

he banged his head multiple times against the window, door, and bullet-proof divider of the

taxicab he was driving.  AR 443-49.  Plaintiff testified that, as a result of the injury, he suffered

disorientation and it became too dangerous for him to drive.  AR 448.  He stated that he

sustained nerve damage that affects his hearing and that he gets confused and misses information

given to him, making it hard to work with people.  AR 448.  Plaintiff also reported problems

with memory.  AR 165-68.  He testified that the accident caused injury to his lower back, neck,

and right shoulder and that he had received treatment from a chiropractor.  He also claimed to

suffer from blurred vision, left ankle problems, and TMJ.  AR 444-51.

After the accident, plaintiff applied for workers' compensation and welfare benefits, and

he worked sporadically.  He was fired from a temporary delivery job because he could not lift

sufficient weight.  AR 456-57.  For a few years, he worked for two friends at a production

company, who "helped [him] out by having [him] work on projects that they normally wouldn't

have someone work on."  AR 457.  Plaintiff indicated that they hired him to help him get by

before his workers' compensation benefits came through and that they were tolerant of his

limitations, which included forgetfulness and problems working efficiently.  AR 457-58.

Plaintiff received workers' compensation benefits from 1997 to 2007.[2]  AR 125-30.  He was

---

[1] Plaintiff initially claimed disability as of December 13, 1996, but indicated that his conditions first interfered with his ability to work as of March 10, 1993.  AR 133-36, 154.  In his decision denying benefits, the Administrative Law Judge treated March 10, 1993, as plaintiff's "amended onset date."  AR 12.
[2] At the time of the hearing before the ALJ, plaintiff still had an active workers' compensation case and anticipated

2

homeless from 2005 to 2008 but was living in Section Eight housing at the time of the hearing. AR 442-43, 461. While homeless, plaintiff spent his time walking, picking up cans, going to bookstores, and riding public transport. AR 162, 452-53. He testified that he occasionally lifted up to twenty pounds of glass bottles but experienced temporary pain from doing so. AR 452-53.

At the hearing, the ALJ took testimony from Dr. Alfred G. Jonas, a psychiatrist appearing as a medical expert ("ME"). He stated that the record was mixed in terms of maintenance of appropriate social functioning and concentration and pace but that he would anticipate no impairments or a mild, or possibly moderate, degree of impairment in those areas. AR 470-71. He noted that plaintiff's neuropsychological evaluation found mild to moderate impairment in executive functioning. Id. He testified that plaintiff's previous problems returning to work were predominantly pain-related, that plaintiff suffered from some memory impairment, and that plaintiff would not be good at working in fast-paced settings requiring multitasking. AR 471-73. The ME stated that he was not familiar with PET scans and their implications. AR 480.

Julie A. Andrews, a vocational expert ("VE"), also testified at the hearing. She classified plaintiff's former work as a taxicab driver as semi-skilled and involving medium exertion, but she noted that plaintiff had testified to performing the job up to a heavy exertional level. AR 484. The ALJ presented her with a hypothetical individual of plaintiff's age, education, and work background who could, inter alia, lift and carry fifty pounds occasionally and twenty-five pounds frequently; could understand, remember, and carry-out simple instructions; and would need to limit interaction with the public and avoid fast-paced work situations. AR 485-86. The VE testified that such an individual could not perform plaintiff's past relevant work as a driver but that there existed jobs in the national economy that such a person could perform. AR 486-88. In response to a hypothetical about a person who could not sustain concentration and

attending a hearing in April 2009. AR 444.

attention, remember and carry out instructions, remember locations and word-like procedures, perform activities within a schedule, and maintain attendance and punctuality, the VE indicated that there were no jobs that such an individual could perform. ER 488-89.

The plaintiff's medical records were also submitted for the ALJ's consideration. The record contains numerous assessments of plaintiff's alleged medical impairments, including:

- A report, dated May 6, 1993, by treating neurologist Dr. Jay A. Rosenblum stating that plaintiff complained of neck and back pain and numbness but finding no evidence of muscle weakness or spasm. Dr. Rosenblum diagnosed plaintiff with a spinous dysfunction, a cranial cerebral trauma, and a post traumatic syndrome and recommended further testing. AR 203-06. The record also contains excerpts of testimony by Dr. Rosenblum, which was given on December 1, 1998, in connection with accident-related litigation. In his testimony, Dr. Rosenblum stated that he last examined plaintiff in late 1996, that plaintiff's symptoms seemed to be worsening, and that it appeared that plaintiff's condition would be permanent. AR 329-36. He stated that plaintiff could not do work requiring independent thinking, interpersonal relationships, or a nine to five work schedule. AR 336-39.

- Reports by chiropractors Allan J. Pollack and Stanley Kestenbaum indicating no disability preventing plaintiff from working. AR 224-25.

- An October 4, 1994 report by Dr. Michael J. Katz, an orthopedic surgeon, providing the results of an independent medical examination performed for the Workers' Compensation Board. The report states that plaintiff has a herniated disc and recommends approval for physical therapy, followed by a re-evaluation. AR 209-11.

- An evaluation by Dr. Michael J. Mazzeo, a neurologist, from August 4, 1998, diagnosing post-concussion syndrome; cervical root lesion; lumbosacral radiculopathy; right shoulder complex derangement; cervical, thoracic, and lumbosacral myfascitis; herniated discs; and mouth and jaw problems. He recommended further testing. AR 212-17.

- An August 12, 1998 letter signed by Dr. Jason Brown, a neurologist, and Dr. Avraham Schweiger, a neuropsychologist, of the Center for Cognition and Communication ("Center"), indicating that Dr. Rosenblum, on March 23, 1998, had recommended that plaintiff seek neuropsychological consultation, as his symptoms had not resolved. The letter stated that a July 1996 evaluation by Dr. Elkhonon Goldberg had revealed neuropsychological deficits in visual-spatial memory, among other things. It requested a re-evaluation of plaintiff's functioning to assess his present status. AR 354-55.

- A neuropsychological evaluation made over five days of testing at the Center from September to December 2002. The evaluation states that tests suggest impairments in the neuropsychological functions of concentration, sustained and focused attention, short-

term memory, verbal retrieval, paying attention to details, calculations, and mental control. It further states that the results are consistent with a history of mild brain damage, gives a diagnostic impression of post concussion syndrome, and suggests that a trial of rehabilitation "may be worthwhile." AR 226-34.

- Study analysis of a PET scan from May 21, 2007, revealing evidence of hypo-metabolism. AR 254-47. A letter, dated June 21, 2007, from the Dr. Brown, indicates that the PET scan was consistent with plaintiff's reported injury and the clinical findings from plaintiff's 2002 testing at the Center. AR 343. On June 25, 2007, Dr. Brown submitted a form to the Workers' Compensation Board stating that the results of plaintiff's PET scan warranted the reopening of plaintiff's case and giving his opinion that the plaintiff was unable to work. AR 344.

- A May 23, 2007 report of an independent neurological examination performed by Dr. Mitchell S. Raps concluding that plaintiff had resolved cervical and lumbar spine sprains, was not disabled from a neurologic point of view, and could return to work without restriction. AR 238-42. The report indicates that Dr. Raps reviewed a range of plaintiff's medical records but does not state that he reviewed plaintiff's PET scan. AR 241. The report notes that plaintiff was continuing chiropractic treatments at the time of the examination. AR 239.

- A report dated April 4, 2008, of a consultative psychiatric examination by Mindy Zelen, Ph.D. AR 286-89. The report stated that plaintiff had short-term memory and concentration difficulties, had trouble learning new material, and felt confused sometimes. It opined that plaintiff "may be able to maintain a regular schedule possibly with retraining and tasks that are simple." Id. The report noted that the results of the evaluation appeared consistent with cognitive problems by history, which "may significantly interfere with [plaintiff's] ability to function on a daily basis." AR 289.

- A report dated April 4, 2008, of a consultative physical examination by Dr. Aurelio Salon. AR 290-93. Dr. Salon diagnosed plaintiff with a history of low back, neck, and arthralgias of other joints, hypertension, and skin rashes. He concluded that there were no objective findings to support the fact that plaintiff would be restricted in his ability to sit or stand or in his capacity to climb, push, pull, or carry heavy objects. AR 293.

- Psychiatric review forms and a mental functional capacity assessment, dated June 2, 2008, completed by state agency review psychiatrist Dr. Z. Mata. AR 322-25, 359-72. Dr. Mata concluded there was insufficient evidence from the period December 31, 1996 to 2002 to draw any conclusions. For the time period after 2002, he found that plaintiff had post-concussion syndrome but concluded that he was able to maintain attention and concentration for an eight hour workday with normal breaks. AR 324.

By decision dated June 12, 2009, the ALJ found that plaintiff was not disabled at any time

since March 10, 1993. AR 9-24. On March 26, 2010, the Appeals Council denied plaintiff's

request for review of the ALJ's decision, which rendered it final. AR 1-4. This action followed.

## DISCUSSION

### I. Standard of Review

This case comes to the court for review of the Commissioner's decision that the plaintiff

is not disabled.

> Under the Social Security Act, a "disability" is defined as inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1). An individual is considered to be under a "disability" if his impairment is

of such severity that he is unable to perform his previous work and, given his age, education, and

work experience he is not able to engage in any other type of substantial gainful employment in

the national economy. See 42 U.S.C. § 423(d)(2)(A). In determining whether an individual is

disabled, the Commissioner is to consider both objective and subjective factors, including

"objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence

of pain and disability testified to by the claimant or other witnesses, and the claimant's

educational background, age, and work experience." Parker v. Harris, 626 F.2d 225, 231 (2d

Cir. 1980) (citations omitted).

In order to establish disability under the Act, a claimant must prove that (1) he is unable

to engage in substantial gainful activity by reason of a physical or mental impairment expected to

result in death or that had lasted or could be expected to last for a continuous period of at least

twelve months; and (2) the existence of such impairment was demonstrated by medically

acceptable clinical and laboratory techniques. 42 U.S.C. §§ 423(d), 1382(a); see also Shin v.

Apfel, 1998 WL 788780 at *5 (S.D.N.Y. November 12, 1998) (citing cases).

The Social Security Administration ("SSA") has promulgated a five step process for

6

evaluating disability claims. See 20 C.F.R. § 404.1520. The Second Circuit has characterized this procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful employment. If he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)) (brackets and alteration in original). The plaintiff has the burden of establishing disability on the first four steps of this analysis. On the fifth step, however, the burden shifts to the Commissioner. See Bluvband v. Heckler, 730 F.2d 886, 891 (2d Cir. 1984).

The court's role in reviewing the decisions of the SSA is narrowly confined to assessing whether the Commissioner applied the correct legal standards in making his determination and whether that determination is supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c); Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Donato v. Secretary, 721 F.2d 414, 418 (2d Cir. 1983). Substantial evidence is defined as "more than a mere scintilla[:]" it is evidence that a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted).

II.     The ALJ's Decision

By decision dated June 30, 2009, the ALJ determined that plaintiff was not disabled within the meaning of the Act. AR 13. At step one of the disability claim analysis, the ALJ

determined that plaintiff had not engaged in substantial gainful activity since March 10, 1993. AR 14. At step two, he determined that plaintiff had the following severe combination of impairments: post-concussion syndrome, obesity, degenerative changes of the cervical spine, degenerative disc disease of the lumbar spine, right shoulder derangement, hypertension, and TMJ. AR 15. However, at step three, the ALJ determined that those severe impairments did not meet or medically equal one of the listed impairments and therefore, before moving to steps four and five, assessed plaintiff's residual functional capacity. AR 16.

The ALJ determined that plaintiff had the residual functional capacity to perform less than a full range of medium work. Id. Specifically, the ALJ determined that plaintiff could lift and carry and push and pull fifty pounds occasionally and twenty-five pounds frequently; stand and walk six hours in an eight hour workday; sit six hours in an eight hour workday; frequently balance, stoop, kneel, crouch, crawl; and occasionally reach above shoulder level and perform frequent reaching with the right dominant upper extremity; but that he could not work in high exposed places. Id. The ALJ also concluded that plaintiff was limited to understanding, remembering and carrying out short, simple instructions and making simple work-related decisions; that plaintiff could respond appropriately to supervision, co-workers, and work situations; and that plaintiff should have only occasional interaction with the public and must avoid fast-paced work environments. Id.

The ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but, "utilizing the regulatory scheme for evaluating credibility," the ALJ did not accept the plaintiff's allegations concerning the intensity, persistence, and limiting effects of those symptoms and plaintiff's inability to work. AR 18. The ALJ stated that these allegations were unsubstantiated by the medical record, which included

no indication of significant ongoing medical treatment other than chiropractic treatment, which had been conservative in nature. Id. The ALJ noted that plaintiff's cognitive impairment clearly limited his executive functioning but that the overall evidence failed to indicate significant deficits with activities of daily living and overall functioning. Id. The ALJ thus afforded little weight to plaintiff's alleged inability to engage in work activity. Id.

The ALJ also based his assessment of plaintiff's residual functional capacity on the medical record. With regard to the records of plaintiff's cognitive limitations, the ALJ said that he would give considerable weight to the medical opinion of psychiatric consultant Zelen, "because the opinion followed an examination performed by an appropriate specialist with the opinion supported by the overall record." AR 21. He stated that Dr. Rosenblum's opinion had been given some weight because of the treatment relationship and specialty but that Dr. Rosenblum's opinion that plaintiff could not manage a normal workday or handle work requiring interpersonal relationships was not supported by the overall record. The ALJ summarized, in detail, the report by neurologist Dr. Raps but did not state what weight, if any, would be given to it. AR 19. The ALJ stated that he would accord some weight to the ME's opinion because of his review of the complete file, his medical specialty, and his familiarity with the disability program. AR 19. Noting that the state agency did not have all of plaintiff's records, the ALJ also afforded some weight to the opinion of its medical consultant as to plaintiff's mental functioning, which concluded that claimant's diagnosis was consistent with mild brain damage but that plaintiff could work a normal eight hour day. AR 20, 324. With regard to plaintiff's alleged physical impairments, the ALJ noted the chiropractors' reports opining that plaintiff could perform his normal job and stated that considerable weight would be accorded to the consultative internal medicine examination by Dr. Salon. AR 19-21. The ALJ also stated that he considered

plaintiff's award of Workers' Compensation benefits but noted that the SSA employed different standards in assessing disability. AR 21.

Having determined plaintiff's residual functional capacity, the ALJ decided, at step four, that plaintiff was unable to perform his past relevant work as a taxi driver. AR 22. At step five, the ALJ determined, based on the VE's testimony, that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." He therefore concluded that plaintiff was not disabled.

A.     The ALJ Did Not Properly Apply the Treating Physician Rule

The treating physician rule requires that, in assessing the evidence supporting a disability claim under the Act, an ALJ must given controlling weight to a treating physician's opinion as to the nature and severity of an alleged impairment if the opinion is well supported by medical findings and it is not inconsistent with other substantial evidence in the record. Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). Where an ALJ declines to accord controlling weight to the medical opinion of a treating physician, he must give good reasons for refusing to do so. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted). If he gives less than full weight to such an opinion, the ALJ must consider various "factors" to determine how much weight to give it, including:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA]'s attention that tend to support or contradict the opinion.

Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); see Gunter v. Comm'r of Soc. Sec., 361 Fed. Appx. 197, 199 (2d. Cir. 2010). Moreover, an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the

administrative record. <u>Perez v. Chater</u>, 77 F.3d 41, 47 (2d Cir. 1996). When a treating

physician's opinion "is not adequately supported by clinical findings, the ALJ must attempt, <u>sua</u>

<u>sponte</u>, to develop the record further by contacting the treating physician to determine whether

the required information is available." <u>Cleveland v. Apfel</u>, 99 F. Supp. 2d 374, 380 (S.D.N.Y.

2000) (citing 20 C.F.R. § 404.1512(e)).

Here, the ALJ failed to apply properly the treating physician rule in assessing the opinion

of Dr. Rosenblum. In reasoning that Dr. Rosenblum's opinion was entitled to only "some

weight," the ALJ stated that Dr. Rosenblum's assessment that plaintiff could not manage nine to

five work or work that would require interpersonal relationships was "not supported by the

overall record including the neuropsychological testing and [plaintiff]'s testimony." AR 21.

These reasons are insufficient grounds for discounting Dr. Rosenblum's opinion. Plaintiff

testified that he could not sustain fulltime work and that his cognitive problems made it difficult

to work with people, which supports Dr. Rosenblum's assessment. Moreover, Dr. Rosenblum's

opinion is not inconsistent with other substantial evidence of plaintiff's neuropsychological

health in the record, including the Center's study, Dr. Brown's opinion, and Dr. Zelen's expert

observations that plaintiff "may" be able to maintain a normal schedule. <u>See</u> <u>Clark</u>, 143 F.3d at

118. It is not clear on what basis the ALJ concluded otherwise.

The reports of Dr. Raps and Dr. Mata are not to the contrary. Dr. Raps' report focuses

only on plaintiff's neurologic state and does not discuss his claims of neuropsychological

disability, and Dr. Mata was a consulting physician who was presented with an incomplete

record and does not appear to have examined plaintiff. Such evidence does not constitute

substantial evidence capable of displacing Dr. Rosenblum expert opinion, at least where good

reasons are not stated for doing so. <u>Cf.</u> <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 107-08 (2d Cir.

2003) (finding that reports of non-examining consulting physicians were not substantial evidence where they relied on incorrect or limited information). Because the ALJ cannot be said to have provided good reasons for giving Dr. Rosenblum's opinion less than controlling weight, remand is appropriate. See Halloran, 362 F.3d at 33 (deeming remand appropriate when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion).

The ALJ also erred in its application of the treating physician rule insofar as he did take into account the views of Dr. Brown. Plaintiff indicated that he received treatment from Dr. Brown, and Dr. Brown indicated, on a form to the Workers' Compensation Board, that he was still treating plaintiff as of 2007. The ALJ's failure to consider Dr. Brown's opinion that plaintiff could not work, which was based on his neuropsychological assessment of plaintiff at the Center and his review of plaintiff's PET scan, thus also merits reversal and remand. See Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (advising that remand is generally the appropriate remedy where an ALJ has not considered non-duplicative evidence favorable to plaintiff). If the ALJ did not find Dr. Brown's opinion regarding plaintiff's inability to work to be supported by substantial evidence, he had an obligation to contact Dr. Brown and develop the record further in that regard. See Cleveland, 99 F. Supp. 2d at 380. He could not simply disregard the evidence without comment.

B.     The ALJ Did Not Give Proper Weight to Plaintiff's Subjective Complaints

The ALJ also erred in discounting plaintiff's subjective claims regarding his alleged cognitive impairments. An ALJ has discretion to evaluate a plaintiff's credibility in assessing his assertions of pain or other limitations. See McDonald v. Astrue, No. 08-CV-3916, 2011 U.S. Dist. LEXIS 113631, at *20-21 (E.D.N.Y. Sept. 30, 2011). However, in exercising that

judgment, "[i]f the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987).

In the instant case, the ALJ found that plaintiff's allegations concerning the intensity and limiting effects of his symptoms were not fully credible because his allegations of pain were not substantiated by the record and because the evidence of plaintiff's cognitive impairment failed to indicate significant deficits with activities of daily living and overall functioning. That plaintiff was able to carry out the activities of daily living and function at a minimal level is not, however, a legitimate reason to discount his alleged difficulties functioning in a work environment, particularly since plaintiff never asserted that his minimal daily functioning was affected by the brain trauma he allegedly sustained. Thus, remand is appropriate for the ALJ to determine whether or not to credit plaintiff's claims that his impairment causes him memory problems and disables him from interacting efficiently and effectively in a normal work setting.

## CONCLUSION

The court recognizes the significant burden placed on ALJs who are charged not only with reaching independent, informed decisions on the basis of often complicated records but also with fully developing those records and protecting the rights of pro se claimants. The task is difficult and the court recognizes the diligent and thorough work performed by the ALJ in this case. Nevertheless, for the above-stated reasons, the defendant's motion for judgment on the pleadings is denied, and the case is remanded to the Commissioner for further proceedings consistent with this opinion. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

/S/

_____

Allyne R. Ross
United States District Judge

Dated:       December 30, 2011
              Brooklyn, New York

SERVICE LIST:

**Plaintiff:**

Allan M. Taub
150 Beach 115th Street
Apt. A1
Rockaway Park, NY 10694